78 P.2d 153

ARIAS v. SPRINGER et al.

SAME v. SPRINGER.

Nos. 4333, 4334.

Supreme Court of New Mexico.

March 23, 1938.

Hanna, Wilson & Brophy and James F. Warden, all of Albuquerque, for appellant.

John F. Simms, J. R. Modrall, and Wilson & Remley, all of Albuquerque, for appellees.

BRICE, Justice.

The two cases were consolidated for the purpose of taking testimony, as the greater part of the evidence is pertinent to both cases.

A decree was entered by the district court in each case, canceling a deed because the grantor's signature thereon (ostensibly that of Mary de Romero) was a forgery.

The principal question is one of procedure brought about by an application of the defendants (appellees here), filed in due time, to set aside this decree.

After the parties had concluded the introduction of testimony at the original hearing, the district court decided that the alleged signatures of Mrs. de Romero, appearing as grantor in the two deeds, were forgeries; and made findings of fact accordingly; and on April 20, 1937, entered his decree in each case, canceling the questioned deeds. A motion to set the decree aside was filed April 24, 1937, and came on for hearing the same day, both plaintiff and defendants appearing by their respective counsel.

Plaintiff's counsel protested against the court having allowed handwriting experts (Mr. Osborn of New York and Mr. King of Denver), in their absence, to examine the questioned documents and exhibits of genuine signatures of Mrs. Romero, introduced in evidence. In connection with this protest counsel made the following statement, "The statute allows us five days notice on any hearing and the motion in question was filed only this morning and not until then were we given a copy thereof. We feel that it would be highly prejudicial to allow the hearing at this time without giving us the notice provided by statute and an opportunity to prepare for such hearing. We object also for the reason that at this time we are wholly unprepared."

This protest the court overruled upon the ground that witnesses Osborn and King were present in court, lived in far distant cities, and desired to return home without delay. The court then made this statement: "Now, gentlemen, Mr. Osborn, Mr. King and Mr. Powers are present—I understand

these gentlemen are all away from home and very anxious to get away, and the Court would like to proceed now and go as far as we can, taking the man fartherest away from home, Mr. Osborn, first, with the understanding that counsel for the plaintiff may have a recess with reasonable and additional time to secure and present to the Court any further evidence in addition to that which has heretofore been presented," and entered the following order without further testimony: "This matter coming on to be heard upon motion of defendants herein, as to both the above entitled matters, heretofore joined and consolidated for trial; and, in addition, upon the Court's own motion, and the Court being fully advised in the premises, it is ordered adjudged and decreed that the findings, conclusions and judgments hereinbefore made and entered herein, are hereby vacated and set aside, and the said causes are reopened for further hearing herein, to all of which plaintiff objects and excepts."

Thereafter on the same day, the court proceeded to hear the testimony of Albert D. Osborn and George H. King, experts on questioned documents, which, given at great length, resulted in their conclusions that the deeds in question were not forgeries. At the close of the testimony the court stated: "The Court understands the plaintiff wants a little more time. The Court announced before that the plaintiff would be allowed reasonable time to produce further testimony if they desired to do so, and we will take this matter up for further hearing on Friday the 7th of May at 9:30 A. M."

Thereafter, on the date set, the parties appeared and the taking of testimony was resumed. Attorneys for plaintiff made the following statement: "If the Court please, at this time I would like to make a brief statement into the record, if I may. We desire the record to show that in each of the cases consolidated here for trial, the plaintiffs abandon their theory that the signatures of Mary S. de Romero appearing on the deeds are not her genuine signatures. In both cases we are now relying on the allegations contained in paragraph No. Five of each complaint that the said instruments in question were not signed or executed by Mrs. Romero in their present form, and the allegation that neither of said deeds were legally delivered during the lifetime of Mary S. de Romero, in that she did not intend to pass title to the property described in either of the instruments at the time Luciana Springer obtained possession of said deeds, or at any other time prior to the death of Mary S. de Romero."

Defendants' counsel objected to a trial upon this theory because not within the issues; and among other things stated, "Now if they can show that they were not signed, executed or delivered by Mary S. de Romero during her lifetime, that is within the allegations of the bill; but, if they undertake now to shift the theory of these cases and to attempt to prove that, while they are not forgeries, they have been tampered with, or put together with a genuine signature behind a spurious first page, no such issue is tendered by these pleadings."

The alleged grounds upon which plaintiff sought to cancel the deeds in question are that they were not signed, executed, or delivered by the said Mary S. de Romero during her lifetime, and that the said purported deeds and the signatures of the said Mary S. de Romero appearing thereon are not in reality the signatures of Mary S. de Romero, now deceased, but are forgeries.

The court overruled defendants' objections and proceeded to hear the testimony of the experts called by plaintiff on the question of whether one of the original deeds had been tampered with by removing the first page and substituting another; and if in other respects the two deeds appeared in the form in which they were originally signed. After hearing this testimony, the case was closed.

On May 8, 1937, the court announced his decision in a memorandum opinion, in which he held that the signatures to the deeds were genuine and that the deeds were in the condition in which they were signed by Mrs. Romero; and that they had been delivered during Mrs. Romero's lifetime.

A decree was accordingly entered denying plaintiff any relief and quieting title to the property in the defendants on their cross-action.

Prior to the enactment of chapter 15, N. M.L.1917, upon entry of a judgment the court lost jurisdiction over it; because there was no term of court in this jurisdiction except for jury purposes. Norment v. First Nat. Bank, 23 N.M. 198, 167 P. 731. The material part of section 1 of that act, section 105-801, N.M.Sts.1929, is: "Final judgments and decrees, entered by district courts in all cases tried pursuant to the provisions of this section shall remain under the control of such courts for a period of thirty days after the entry thereof, and for such further time as may be necessary to enable the court to pass upon and dispose of any motion which may have been filed within such period, directed against such judgment."

For 30 days after the entry of a final judgment by the district court, this statute gives the court the same control over it as courts had at common law over their judgments during the term of court at which they were entered. Kerr v. Southwest Fluorite Co. et al., 35 N.M. 232, 394 P. 324.

We stated in Pugh v. Phelps, 37 N.M. 126, 19 P.2d 315, 317: "Since it appears from the record in this case that the motion to amend the judgment was filed within thirty days after the rendition thereof, and was decided by the court within thirty days from the filing thereof, we think the court acted within its authority, and that at the time the motion amending the judgment was sustained and the judgment amended, the court had full control of its judgment and jurisdiction and authority even upon its own motion to make any change, modification, or correction thereof which it deemed proper under the circumstances."

In Henderson v. Dreyfus, 26 N.M. 262, 191 P. 455; Id., 26 N.M. 541, 191 P.

442, this court held that it was authorized to set aside its own judgment on its own motion, without notice to either party. The same authority rests in the district court. Henderson v. Carbondale, etc., Co., 140 U.S. 25, 11 S.Ct. 691, 35 L. Ed. 332; State ex rel. Yilek v. Jehlik, 66 Kan. 301, 71 P. 572, 61 L.R.A. 265; 15 R. C.L. title "Judgments," § 140.

The order entered setting aside the decree was on the court's own motion, as well as on motion of the defendants.

 The plaintiff was allowed time within which to produce testimony in rebuttal of the testimony of defendants' expert witnesses, and did so. The court was not only within his right, but, under the facts of this case, it was his duty to set aside his decree. Ordinarily he should have acted after testimony had been taken on the motion (34 C.J. title "Judgments," § 579), but plaintiff was not injured. He admitted that the deeds were not forgeries, after the witnesses Osborn and King had testified; therefore the testimony of his expert witnesses lead the court into error.

Plaintiff's second assignment of error is as follows: "There is no substantial evidence to support the findings of fact, conclusions of law or the judgment of the court entered on May 12, 1937, * * for the reason that on April 24, 1937, * * the court had set aside and vacated the findings, conclusions and judgments theretofore made which carried with it all of the testimony in support thereof, and the rights of the parties were left by said order vacating the judgment as if no trial had ever been had. * * *"

 When the district court set aside its decree, the status of the case was as though no decree had been entered. The evidence theretofore taken was not set aside or canceled by reason of the cancellation of the decree.

The court's findings of fact, Nos. 5 and 6, are as follows:

"5. On the 30th day of March, 1936, Mary S. de Romero signed, executed, and acknowledged, in the presence of James M. Hubbell, a notary public, and in the presence of Joe Springer and Luciana G. Springer, a deed to Flora Springer Sanchez and Richard Springer, which is the same deed described in the complaint in No. 24,-027, and delivered it to Luciana G. Springer with instructions to retain the same in her possesison until she, Mrs. Romero, died, and then to deliver it to Flora Springer Sanchez and Richard Springer, and imposed no conditions, retained no right to recall the deed, and exercised no control over it thereafter.

"6. On the 4th day of February, 1937, Mrs. Mary S. de Romero signed, executed and acknowledged before James M. Hubbell, a notary public, and before Joe Springer and Luciana G. Springer, a deed, being the same described in the complaint in cause No. 24,028 and delivered the deed to Luciana G. Springer, with instructions to retain the same until she, Mrs. Romero, died, and thereafter to record it, and she imposed no conditions, retained no right to

recall the deed, and exercised no control over it thereafter."

■ These findings are not attacked except upon the theory that all evidence taken prior to the setting aside of the judgment was also canceled. These findings therefore are not attacked and are the facts upon which the case must be determined here.

Plaintiff's point 3 is: "The judgment of May 12, 1937, and the result of the whole proceeding leading up thereto is fundamentally and inherently erroneous and unjust."

■ This point is argued under subpoints 1 and 2; the former of which is: "(1) That the judgment of April 20, 1937, was correct, based upon the evidence in the record. Even though the signatures on the Questioned Documents may have been the genuine signatures of grantor, the first judgment holding the said deeds were invalid and should be cancelled, reached the correct result, although the wrong reason may have been assigned by the court therefor."

We are not authorized to review "the evidence in the record." The court made findings of fact and these findings are the facts of the case in this court unless set aside by this court upon direct attack, following section 6 of Rule 15, which is as follows: "A contention that a verdict, judgment or finding of fact is not supported by substantial evidence will not ordinarily be entertained, unless the party so contending shall have stated in his brief the substance of all evidence bearing upon the proposition, with proper references to the transcript. Such a statement will be taken as complete unless the opposite party shall call attention in like manner to other evidence bearing upon the proposition."

■ This court will not review "the evidence in the record" except to determine whether a finding of fact is supported by substantial evidence or whether requested findings should have been made, Fair v. Morrow, 40 N.M. 11, 52 P.2d 612, except in passing upon a demurrer to the evidence, or motion to dismiss at the close of plaintiff's case, Telman v. Galles, 41 N. M. 56, 63 P.2d 1049, and except when much of the testimony is by deposition or transcript. Davidson v. Enfield, 35 N.M. 580, 3 P.2d 979. We are not, therefore, authorized to review the evidence in the record to determine whether the original judgment holding the deeds invalid was correct according to the evidence.

■ The second subpoint under point 3, is as follows: "(2) That the evidence in the entire record is insufficient to support the findings, conclusions of law and judgment of May 12, 1937, resulting in a dismissal of the complaint of plaintiff and the quieting of the title of the defendants, because: (a) When the sufficiency of the delivery of the deeds, Questioned Documents Nos. 1 and 2, was called in question, defendants endeavored to show by evidence the circumstances under which said deliveries were made, and the burden of proof was upon defendants to show a sufficient deliv-

ery, which the evidence fails to disclose. (b) The Questioned Documents were invalid as shown by the evidence on account of the recording statute."

It would require a review by this court of all the testimony to determine the questions here presented. The court made findings of fact upon which the case must be determined in this court. Findings of fact Nos. 5 and 6, supra, preclude a consideration of this question. These findings are sufficient to justify the district court's conclusion that the deeds were legally delivered.

The general rule of law is that, when the owner of land delivers a deed thereto to a third person with directions to such third person to hold it during the lifetime of the grantor and upon the latter's death to deliver it to the grantee, intending, at the time of the delivery to the custodian, to part forever with all right or power to repossess or control the deed, such delivery is effectual and valid and creates an immediate estate in the grantee. The authorities are so numerous on this question that we call attention to the annotations in 52 A.L.R. 1222 and subsequent cases cited to this note in the A.L.R. Blue Book. The finding of the court is in substance to that effect; and therefore establishes a valid delivery of the deed. 18 C. J. title "Deeds," § 114; Des Granges v. Des Granges, 175 Cal. 67, 165 P. 13; Gilmore v. Griffith, 187 Iowa 327, 174 N.W. 273; Patrick v. Parrott, 92 Ohio St. 184, 110 N.E. 725; Hall v. Dollarhide, 116 Okl. 180, 244 P. 813; Wheeler v. Loesch, 51 Ind.

App. 262, 99 N.E. 502; Wilcox v. Hardisty, 60 Cal.App. 206, 212 P. 633, 635. In the last-mentioned case the California court stated: "Evidence that a grantor delivered his deed to a third person, with instructions to deliver it to the grantee after the grantor's death, without any other evidence of intention, is sufficient to justify the inference that the grantor thereby intended to part with all right thereafter to control the deed. Whether such inference is overcome by other proof involves the question of weighing the evidence, a matter within the exclusive province of the trial court."

The Court of Appeals of New York, in Saltzsieder v. Saltzsieder, 219 N.Y. 523, 114 N.E. 856, 858, in disposing of a similar question, stated: "In the present case the owner gave to a third person the instrument, adequate in form to convey the land to the persons named as grantees, with accompanying instructions to the third person to hold it until the owner's death and hand it over then to those persons. The act and language, considered by themselves, are adequate to expressly acknowledge the intention of the owner to be immediately and unconditionally bound by the provisions of the instrument."

The facts found by the district court express an intention on the part of the grantor to be immediately bound by the deed.

The fact that the deceased grantor made certain attempts to sell the granted property after the execution and delivery

of the deed is immaterial. The court found that there was a delivery and no act of the deceased subsequent to such delivery could destroy its effect. Johnson v. Cooper, 123 Kan. 487, 255 P. 1112; Gappmayer v. Wilkenson, 53 Utah 236, 177 P. 763; Kay v. Walling, 98 Okl. 258, 225 P. 384.

Section 118-110, N.M.Sts.1929, is: "No deed, mortgage or other instrument in writing, not recorded in accordance with section 4786 (118-108), shall affect the title or rights to, in any real estate, of any purchaser, mortgagee in good faith, or judgment lien creditor, without knowledge of the existence of such unrecorded instruments."

■■■ It is said that the plaintiff is a "purchaser" within the meaning of the statute; that he became possessed of the property at the death of Mary S. de Romero by virtue of being her residuary legatee and devisee, and that he knew nothing of such deed until after Mrs. Romero's death; that under the statute quoted he is "a purchaser in good faith" without knowledge of the existence of the questioned deeds. The word "purchaser" has two well-defined meanings. The common and popular meaning is that he is one who obtains title to real estate in consideration of the payment of money or its equivalent; the other is a technical meaning and includes all persons who acquire real estate otherwise than by descent. It includes acquisition by devise. 51 C.J. title "Purchaser," § 2.

■■■ It is evident that the word is used in the statute in its popular sense.

A devisee of real estate takes only the interest the testator had in the property. 69 C.J. title "Wills," § 2459. The object of the statute is to prevent injustice by protecting those who, without knowledge of infirmities in the title, invest money in property or mortgage loans; and those who have acquired judgment liens without such knowledge. None of the cases cited by plaintiff hold otherwise. The cases which hold that a purchaser from the devisee is protected by the recording statute are not in point. He would have been protected against the testator.

■■■ The defendants tendered in evidence the two questioned documents. They were admitted at the time of tender for a specific purpose, and were not thereafter tendered generally. The issues in the case were whether the deed was a forgery, and whether it had been delivered. Hundreds of pages of testimony were introduced by each party, on these issues. The case was tried by them as though these documents were in evidence, and the court so treated them. The plaintiff cannot consistently contend otherwise.

"Formal introduction of documentary evidence may be waived. Thus a formal introduction is waived where the court and parties treat an instrument as in evidence, or where a witness is examined with relation to it, or where it is read without objection, or such reference thereto is made by counsel in his examination as necessarily leads the jury to the conclusion that they are listening to testimony concerning

360

the contents thereof." 64 C.J. title "Trial," § 121.

 Plaintiff filed a "motion to set aside judgment and for a new trial" on the 12th day of May, 1937. To grant a new trial in an equity case would be an unusual and unnecessary proceeding. At common law, as well as under the statute, such proceedings apply to law cases only, and particularly to jury trials. A motion to reopen the case for further testimony is an adequate remedy.

 The district court, under its general powers, may grant a new trial in an equity case, but it is a matter of discretion. 46 C.J. title "New Trial," § 8.

The principal ground upon which the motion is grounded is that the defendant Richard Springer had stated since the trial of the case to two persons, whom plaintiff could produce as witnesses, that he, Springer, had written the alleged signatures of Mary S. de Romero to the deeds.

The court probably took the view that the defendant Richard Springer would deny that he had made such statement, and the improbability that he would make such statement, coupled with his denial and the testimony as to the genuineness of the signatures, would render such testimony of little value.

 It was within the discretion of the court to refuse a new trial and there was no abuse of discretion.

. The court tried the case with a great deal of patience, gave all parties a fair opportunity to present their testimony, and did not err in overruling the motion for a new trial.

The decree is affirmed.

It is so ordered.

HUDSPETH, C. J., and SADLER, BICKLEY, and ZINN, JJ., concur.